# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00124-CR

---

**Ex parte Vester Saylee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NO. D-1-DC-08-904131, THE HONORABLE BRENDA KENNEDY, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

Appellant Vester Saylee appeals from the habeas court's denial of her application for writ of habeas corpus challenging the trial court's order placing her on deferred-adjudication community supervision for sexual assault. *See* Tex. Code Crim. Proc. arts. 11.072, 42A.101; Tex. Penal Code § 22.011(a)(1)(C), (b)(4). In two points of error, appellant contends that the habeas court erred by rejecting her claim that her trial counsel's ineffective assistance during the plea proceedings rendered her guilty plea involuntary. We affirm the habeas court's order denying habeas-corpus relief.

## BACKGROUND

On December 30, 2008, the State indicted appellant for sexual assault, alleging that she engaged in sexual intercourse with an adult patient at the Austin State Hospital where she was working as an orderly.[1] *See* Tex. Penal Code § 22.011(a)(1)(C) (defining sexual assault as "caus[ing]

---

[1] The record reflects that the alleged victim was a 33-year-old male who suffered from mental retardation and post traumatic stress disorder and, as a result, was considered "an adult

the sexual organ of another person, without that person's consent, to contact or penetrate the . . .

sexual organ of another person, including the actor"), (b)(4) (explaining that sexual assault is without

consent of other person if "the actor knows that as a result of mental disease or defect the other

person is at the time of the sexual assault incapable either of appraising the nature of the act or of

resisting it").

On April 2, 2009, appellant pled guilty to the charged sexual assault pursuant to a

negotiated plea bargain.[2]  In accordance with the plea-bargain agreement, the trial court deferred

adjudication of appellant's guilt and placed her on community supervision for seven years.  *See* Tex.

Code Crim. Proc. art. 42A.101.[3]  Appellant was successfully discharged from community

supervision on April 11, 2016.  *See id.* art. 42A.111.

On November 3, 2017, appellant filed a post-conviction application for writ of habeas

corpus under article 11.072 of the Code of Criminal Procedure, alleging that her trial counsel's

_____

without legal capacity."  According to documents in the record, a hospital employee observed appellant, nude from the waist down, straddling the victim, whose pants were down around his ankles, and "riding him"—the victim's erect penis was inside appellant's vagina as she moved on top of him.  In a forensic interview, the victim said that appellant, who was unknown to him, came in to his room when he was lying in bed watching a movie, removed his clothing, took off her pants, straddled him, and forced his private parts into her vagina, moving up and down while he tried to push her off.

[2] In her habeas application as well as in her brief on appeal, appellant states that she pled no contest to the sexual assault.  However, the record reflects that appellant pled guilty to the offense.

[3] At the time that appellant was placed on deferred-adjudication community supervision, the statutes governing community supervision were codified in article 42.12 of the Code of Criminal Procedure.  Effective January 1, 2017, the community supervision statutes were re-codified in chapter 42A of the Code of Criminal Procedure.  *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, § 1.01, 2015 Tex. Gen. Laws 2321, 2321–65.  Because the re-codification was a non-substantive revision of the community supervision laws, we cite to the current statutes in this opinion.

2

representation during the plea proceedings was constitutionally ineffective and rendered her guilty plea involuntary. *See id.* art. 11.072, § 1. Specifically, appellant claimed that her plea was involuntary because her trial counsel failed to investigate the possibility of asserting the insanity defense. The State filed a response, attaching an affidavit of appellant's trial counsel. *See id.* art. 11.072, § 5(b). The habeas court issued a written order denying habeas relief, concluding that appellant had failed to show deficient performance on the part of her trial counsel, had failed to show that but for counsel's alleged deficient performance the result of the proceeding would have been different, and therefore, had "failed to prove that her plea was not voluntarily made." *See id.* art. 11.072, § 6(a).

## DISCUSSION

Appellant challenges the habeas court's denial of her application for writ of habeas corpus in two points of error. In her first point of error, she contends that the habeas court abused its discretion in concluding that she failed to show that her trial counsel's performance was deficient. In her second point of error, appellant asserts that the habeas court abused its discretion in concluding that she failed to demonstrate that she suffered prejudice as a result of trial counsel's alleged deficient performance.

In reviewing a habeas court's decision to grant or deny habeas relief, we review the facts in the light most favorable to the court's ruling and, absent an abuse of discretion, must uphold the ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). An abuse of discretion does not occur unless the court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles,"

3

*State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)), or unless the court's decision "falls outside the zone of reasonable disagreement," *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

In an article 11.072 post-conviction habeas-corpus proceeding, the trial judge is the sole finder of fact. *Ex parte Torres*, 483 S.W.3d 35, 42–43 (Tex. Crim. App. 2016); *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). Thus, in conducting our review of the habeas court's decision, we afford almost total deference to the habeas court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor. *Torres*, 483 S.W.3d at 42–43; *Guerrero*, 400 S.W.3d at 583; *Garcia*, 353 S.W.3d at 788. In addition, we afford almost total deference to the habeas court's application of law to the facts if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We review de novo the habeas court's resolution of mixed questions of law and fact that do not turn on witness credibility as well as its resolution of pure questions of law. *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017); *Absalon v. State*, 460 S.W.3d 158, 162 (Tex. Crim. App. 2015); *Peterson*, 117 S.W.3d at 819.

To prevail on a claim of ineffective assistance of counsel, a habeas applicant must demonstrate, by a preponderance of the evidence, both deficient performance by counsel and prejudice suffered by the applicant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Bowman*, 533 S.W.3d 337, 349 (Tex. Crim. App. 2017); *Torres*, 483 S.W.3d at 43. The applicant

4

must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Bowman*, 533 S.W.3d at 349; *Torres*, 483 S.W.3d at 43. Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient," *Nava v. State*, 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013), and "that counsel's conduct [fell] within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. *See Bowman*, 533 S.W.3d at 349 ("The presumption is that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" (quoting *Strickland*, 466 U.S. at 690)). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). The applicant must further show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Torres*, 483 S.W.3d at 43; *Nava*, 415 S.W.3d at 308. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *accord Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

A criminal defendant has a constitutional right to effective assistance of counsel in plea proceedings. *McMann v. Richardson*, 397 U.S. 759, 770–71 (1970); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010); *see Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim.

5

App. 2009) (describing counsel's duties to provide effective assistance during plea proceedings). A guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). A guilty plea is not voluntary if made as a result of ineffective assistance of counsel. *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012); *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980).

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *accord Ex parte Ali*, 368 S.W.3d 827, 833 (Tex. App.—Austin 2012, pet. ref'd). Where, as here, a defendant is represented by counsel during the plea process, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771; *accord Ali*, 368 S.W.3d at 833. In the context of a collateral attack on a guilty plea, when a habeas applicant challenges the validity of a guilty plea contending that his counsel was ineffective, the applicant must show: (1) that counsel's advice with respect to the plea offer did not fall within the wide range of competence demanded of attorneys in criminal cases, and (2) that counsel's errors affected the outcome of the plea process—that is, that there is a reasonable probability that, but for counsel's errors, the applicant would not have accepted the offer and pled guilty but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Torres*, 483 S.W.3d at 43; *Harrington*, 310 S.W.3d at 458; *Reedy*, 282 S.W.3d at 500.

6

To prevail on a post-conviction writ of habeas corpus, the applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief. *Torres*, 483 S.W.3d at 43; *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002); *Ali*, 368 S.W.3d at 830. Accordingly, in this collateral attack, appellant had the burden to produce evidence showing: (1) that trial counsel's failure to investigate the possibility of asserting the insanity defense—if counsel failed to investigate or consider such a defense—fell below the wide range of competence demanded of attorneys in criminal plea proceedings, and (2) that the failure to conduct such an investigation regarding the insanity defense affected the plea process—that is, that, but for trial counsel's failure to explore or discuss the possibility of asserting the insanity defense, appellant would not have accepted the plea offer and pled guilty but would have insisted on going to trial. *See Hill*, 474 U.S. at 56; *Torres*, 483 S.W.3d at 43. A review of the record in this case supports the habeas court's conclusion that appellant did not meet this burden.

In its order denying appellant's habeas application, the habeas court made the following relevant findings:

5.     In response to this writ, Applicant's trial counsel, [Defense Counsel], filed two affidavits that this court finds credible.[4]

6.     Counsel thoroughly discussed with Applicant and her family the option for trial and potential defenses, including the insanity defense.

7.     This court does not find Applicant's statement that her trial counsel never told her about the possibility of the insanity defense credible.

---

[4] The habeas court indicated that trial counsel filed two affidavits, which the court found to be credible. However, we find only one affidavit from trial counsel in the record filed on appeal.

8. Applicant was adamant that she did not want to pursue a trial because of the risk of incarceration.

. . .

10. Counsel was able to effectively communicate with Applicant and Applicant understood the nature of the charges against her and the potential consequences of the proceedings.

Appellant challenges the habeas court's finding that trial counsel "thoroughly discussed with Applicant and her family the option for trial and potential defenses, including the insanity defense." Citing the affidavit that she provided in support of her habeas application, appellant argues that the evidence demonstrates the contrary—that counsel did not discuss the insanity defense with her. In that affidavit, appellant averred,

> [My attorneys] never told me about the possibility of using an insanity defense. If they would have asked me to see a doctor to see if I was insane, and the doctor told me that there was a possibility I was insane at the time of the offense, and my attorneys then explained how the insanity defense would apply to me, I would have gone for a trial and pleaded not guilty by reason of insanity.[5]

However, in its findings of facts and conclusions of law, the habeas court explicitly found appellant's assertion that her trial counsel never told her about the possibility of the insanity defense to be not credible. Furthermore, the habeas court found the affidavit filed by appellant's trial counsel in response to appellant's writ application to be credible. In his affidavit, trial counsel stated that he

---

[5] Similarly, an affidavit from appellant's sister indicated that appellant's attorneys "never discussed the possibility of using an insanity defense to help [appellant]."

8

recalled that appellant was "vehemently against going to trial." He further averred that he recalled, "consistent with [his] general practice, discussing potential trial defenses."

As noted previously, in a post-conviction writ application filed pursuant to Article 11.072, the trial judge is the sole finder of fact, and thus we afford almost total deference to a trial court's factual findings when they are supported by the record and when they are based on credibility and demeanor. *Garcia*, 353 S.W.3d at 787–88. We afford this level of deference "even when no witnesses testify and all of the evidence is submitted through affidavits, depositions, or interrogatories." *Guerrero*, 400 S.W.3d at 583. Moreover, "when a trial court makes an explicit credibility finding, we must give deference to that credibility determination." *State v. Sheppard*, 271 S.W.3d 281, 286 (Tex. Crim. App. 2008). In this case, it is clear that the habeas court simply did not believe the witness statements asserting that trial counsel did not discuss the possibility of the insanity defense.

Appellant contends that trial counsel's affidavit is insufficient to support the habeas court's finding that the insanity defense was discussed because counsel did not explain what specific defenses he discussed with appellant or directly refute appellant's claim that the insanity defense was never discussed. However, the burden was on appellant to establish that trial counsel did not discuss the insanity defense as she claimed; it was not on trial counsel to prove that he did. Moreover, in making its determination on an 11.072 application for writ of habeas corpus, the habeas court may rely on its personal recollection. Tex. Code Crim. Proc. art. 11.072, § 6(b); *see Ex parte Morales*, No. 03-17-00461-CR, 2018 WL 4171271, at *2 (Tex. App.—Austin Aug. 31, 2018, no pet.) (mem. op., not designated for publication) ("There is no question but that the trial court is the fact finder

9

in an article 11.072 habeas proceeding, may evaluate the credibility of evidence—even when set out in affidavit form, and may rely on its own personal recollections in deciding whether to grant or deny relief." (citing Tex. Code Crim. Proc. art. 11.072, § 6(b))). In this case, the judge in the habeas proceeding was the same judge who presided over appellant's plea proceedings. The record reflects that the parties below and the trial court were aware of appellant's mental-health issues.[6] Thus, it was reasonable for the habeas court to conclude that a discussion of "potential trial defenses" included those that addressed appellant's mental-health issues, which would include the insanity defense. *See Ex parte Evans*, 338 S.W.3d 545, 546 (Tex. Crim. App. 2011) ("We consider the evidence and factual conclusions that may be implied from the evidence in the light most favorable to the habeas judge's findings."); *see, e.g.*, *Ex parte Karedia*, Nos. 03-11-00831-CR & 03-11-00832-CR, 2013 WL 599555, at *3 (Tex. App.—Austin Feb. 15, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that it was sufficient for habeas court to rely on affidavits, record, and personal knowledge of plea attorney when making determination on habeas application).

Deficient performance means "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A

---

[6] For example, the record reflects that appellant's pretrial bond conditions included pretrial mental-health supervision; that trial counsel obtained a copy of appellant's medical records from her stay at the Austin State Hospital following a suicidal episode (approximately three months after her arrest); that trial counsel moved for a continuance citing his need to consult with a medical professional concerning appellant's competency; that the presentence investigation documented appellant's mental-health issues; and that it was part of the plea bargain that appellant be supervised on the mental-health caseload, follow MHMR recommendations, and take appropriately prescribed medications.

reviewing court must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. *Id.* at 689. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 690). Further, in reviewing the habeas court's decision to grant or deny habeas-corpus relief, we view the facts in the light most favorable to the habeas court's ruling. *Wheeler*, 203 S.W.3d at 324; *Kniatt*, 206 S.W.3d at 664; *Ali*, 368 S.W.3d at 830. The record in this proceeding—viewed in the light most favorable to the habeas court's ruling and with deference to the court's credibility findings—does not support appellant's claim that counsel's performance was deficient in the manner that she claims. *See, e.g.*, *Ex parte Riley*, No. 03-16-00350-CR, 2016 WL 6068254, at \*4 (Tex. App.—Austin Oct. 11, 2016, pet. ref'd) (mem. op., not designated for publication) (deferring to habeas court's findings and concluding that there was no support for assertion on appeal that trial counsel told defendant he would face felony charges if he did not accept plea). Given the habeas court's credibility determinations, appellant failed to establish that her trial counsel did not investigate or discuss the possibility of the insanity defense, let alone that the failure to do so in the circumstances present here fell below the objective standard of reasonableness under prevailing professional norms.

Because we conclude that, on this record, the habeas court correctly concluded that appellant failed to meet her burden on the first prong of *Strickland* concerning deficient performance, we need not consider whether the habeas court properly concluded that appellant failed to establish the requirements of the second prong regarding prejudice. *See Lopez v. State*, 343 S.W.3d 137, 144

11

(Tex. Crim. App. 2011); *see also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry (the deficiency prong and the prejudice prong) if the defendant makes an insufficient showing on one."); *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."). Nevertheless, we also conclude that the habeas court did not abuse its discretion in concluding that appellant failed to demonstrate that she suffered prejudice as a result of trial counsel's alleged deficient performance.

To establish prejudice in the guilty-plea context, an applicant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *accord Ex parte Pena*, No. 03-16-00735-CR, 2017 WL 3222412, at *5 (Tex. App.—Austin July 28, 2017, no pet.) (mem. op., not designated for publication); *see Ali*, 368 S.W.3d at 835 (recognizing that prejudice test is objective and turns on what reasonable person in defendant's shoes would do). Factors to consider include the evidence supporting an applicant's assertions, the likelihood of success at trial, the risks the applicant would have faced at trial, and the benefits received from the plea bargain. *Torres*, 483 S.W.3d at 48; *Riley*, 2016 WL 6068254, at *6. Considering those factors in this case, the habeas court could have reasonably concluded that rejecting the plea bargain in this case would not have been rational under the circumstances present here.

The only evidence appellant presented to support her assertion that she would have insisted on going to trial instead of pleading guilty had she known "how the insanity defense would apply to [her]" were statements to that effect in her affidavit and similar statements in her sister's

12

affidavit. However, the habeas court, as sole judge of witness credibility, would not have abused its discretion in disbelieving these statements. *See Ali*, 368 S.W.3d at 840–41; *see also Shanklin v. State*, 190 S.W.3d 154, 167 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd, improvidently granted) ("The trial court is not required to believe actual statements contained within an affidavit, even when they are uncontradicted by other affidavits."); *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) ("The court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused or any defense witness simply because it was uncontradicted."). We defer, as we should, to the habeas court's credibility determination in rejecting appellant's assertions regarding prejudice. *See Shepard*, 271 S.W.3d at 286; *Ali*, 368 S.W.3d at 840–41.

Concerning the likelihood of success, we observe that the record supports the habeas court's implied conclusion that there was a minimal likelihood that the insanity defense would have been successful at trial. In support of her habeas application, appellant provided the affidavit of a board-certified forensic psychologist who opined that "it is certainly possible that around the time of the offense, [appellant's] mental health diagnosis played a significant role in her decisions;" that "it is highly likely that [appellant] does not remember some or all of her actions around the time of the offense, and her mental state may have led to decreased awareness that she was committing a sexual assault;" and that because appellant's actions (in committing the sexual assault) "appeared out of character for her," "it is highly likely that [appellant] was not aware of the wrongfulness of her actions at the time of the offense as a result of severe mental illness." However, in preparation for filing her habeas application, appellant was first seen by a board-certified psychiatrist who opined

13

that "[t]he insanity defense was inapplicable in this case" because "although appellant had a significant mental disease at the time of the offense, it did not prevent her from knowing that her conduct was wrong."

Thus, although the record reflects that appellant suffered from mental-health issues, the evidence indicating that those issues constituted a mental disease or defect that prevented her from knowing that her conduct was wrong was lacking or weak. Even appellant's psychological expert opined only that it was "highly likely" that appellant was not aware of the wrongfulness of her conduct. Importantly, the expert also noted an equal likelihood that appellant did not remember engaging in the conduct at all. Not remembering conduct is distinct from not knowing that conduct is wrong and does not entitle an accused to the insanity defense. Further, the psychiatric expert appellant first consulted in preparing for her habeas application provided a contradicting opinion—that appellant knew that her conduct was wrong and, therefore, the insanity defense was not applicable. The record also reflects that at the time of her arrest, appellant demonstrated that she understood right from wrong, acknowledging several times that her conduct was wrong and apologizing.[7]

---

[7] We also observe that in the plea paperwork, appellant stated, under oath, that she was "sane at the time of the offense." In addition, at the time of the guilty plea, the trial judge, who had the opportunity to observe appellant during the plea proceedings, documented in the plea paperwork that she found that "[appellant] was sane when the alleged offense was committed." Since the habeas judge was also the trial judge who presided over the plea proceedings, the habeas judge had previously found that appellant was sane at the time of the offense. This personal recollection may have factored into the habeas judge's implied determination that the likelihood of success of the insanity defense at trial was minimal.

Concerning the risks appellant would have faced at trial, the record reflects that an eyewitness observed appellant committing the offense. That witness observed appellant in the act of sexual intercourse with the victim, stopped her, and removed her from the patient's room, but again caught appellant in the act of sexual intercourse with the same victim only a short time later.[8] The eyewitness's account was corroborated by the victim, who described the sexual assault, and other hospital employees, who saw appellant immediately after being caught the second time as she was pulling up her pants. In addition, appellant's behavior after being arrested—which included making incriminating statements and accusing the victim of lying—evinced a consciousness of guilt. Thus, the risks of trial—including the likelihood of conviction and potential for incarceration—were significant. Furthermore, the record reflects that appellant was adamant about avoiding prison. Therefore, the benefits of the negotiated plea bargain were significant in that appellant avoided both conviction and incarceration.

Viewed in the light most favorable to the habeas court's ruling, the record in this habeas proceeding does not demonstrate that appellant met her burden to overcome the strong presumption that trial counsel provided constitutionally effective assistance to appellant during the plea proceedings. *See Bowman*, 533 S.W.3d at 350 ("An applicant who cannot overcome this presumption by a preponderance of the evidence will not succeed in his Sixth Amendment claim."). Because appellant did not establish her claim of ineffective assistance of counsel, she failed to

---

[8] The record reflects that after the eyewitness caught appellant in the act of sexual intercourse with the victim, the witness yelled at her to stop, removed her from the victim's room, and escorted appellant out of the building. As he attempted to gain assistance from other hospital employees, he noticed that appellant was no longer with him. He immediately returned to the victim's room and again caught appellant engaging in sexual intercourse with the victim.

15

demonstrate, by a preponderance of the evidence, that her guilty plea was involuntary. *See Ex parte Scott*, 190 S.W.3d 672, 673 (Tex. Crim. App. 2006) ("It is the Applicant's burden to prove, by a preponderance of the evidence, that his attorney was constitutionally deficient before he might be entitled to relief on a writ of habeas corpus."). Consequently, the habeas court did not abuse its discretion in denying appellant's application for writ of habeas corpus. We overrule appellant's two points of error.

## CONCLUSION

The record here does not substantiate the ineffective-assistance claim asserted in appellant's habeas application. Because appellant provided no evidence that the habeas court found credible in support of her claim for habeas-corpus relief, she failed to satisfy her requisite burden of proving, by a preponderance of the evidence, facts that would entitle her to relief. *See Guerrero*, 400 S.W.3d at 586. She failed to demonstrate, by a preponderance of the evidence, that her trial counsel rendered ineffective assistance during the plea proceedings and, thus, she failed to establish, by a preponderance of the evidence, that her guilty plea was involuntary. Accordingly, we conclude that the habeas court did not abuse its discretion in denying appellant's application for writ of habeas corpus. We affirm the habeas court's order denying relief.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   March 29, 2019

Do Not Publish